UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:                                              Case No.:  10 – 10759 – S11

THE VAUGHN COMPANY, REALTORS,                       Chapter 11

                                   Debtor.

---

JUDITH WAGNER, Chapter 11 Trustee of the
Bankruptcy Estate of The Vaughn Company,            Adv. Pro. No.:  12 – 01082-s
Realtors,

           Plaintiff,

                        v.

MICHAEL ROSENBERG, individually,
MICHAEL ROSENBERG, as trustee of the
Rosenberg SRE Trust, dated September 19,
1991, JOHN DOE, as trustee of the Rosenberg
SRE Trust, dated September 19, 1991, and
EMILY ROSENBERG,

           Defendants.

---

**UNOPPOSED MOTION & BRIEF TO WITHDRAW THE REFERENCE**

---

## INTRODUCTION

Defendants Michael Rosenberg, individually and as trustee of the Rosenberg SRE Trust, dated September 19, 1991 and Emily Rosenberg (the "Defendants"), respectfully submit this memorandum of law in support of Defendants' motion to withdraw the reference of the above-referenced adversary proceeding (the "Adversary Proceeding") from the bankruptcy court to this Court pursuant to 28 U.S.C. § 157(d).

## PRELIMINARY STATEMENT

Withdrawal of the reference is appropriate because, under the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the bankruptcy court lacks constitutional authority to adjudicate the types of claims asserted against the Defendants. Furthermore, the Defendants are entitled to a jury trial and the bankruptcy court lacks jurisdiction to conduct a jury trial absent the consent of all parties. Considerations of cost and efficiency support immediate withdrawal.

*Stern v. Marshall* prohibits the bankruptcy court from entering final judgments on the fraudulent conveyance claims asserted in the Adversary Proceeding. The *Stern* majority held that bankruptcy courts lack constitutional authority to enter final, binding judgments on common law claims falling outside the narrow "public rights" exception. While *Stern* applied that holding to a counterclaim filed by the estate of a debtor, the Supreme Court held, in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), that fraudulent conveyance actions are akin to common law claims and fall outside the "public rights" exception. *Granfinanciera* coupled with *Stern*'s analysis compels the conclusion that the fraudulent conveyance and preference claims asserted in the Adversary Proceedings may be finally decided only by an Article III judge.

{N0009750 }                                   2

Moreover, Defendants have a constitutional right to a jury trial. Absent Defendants' consent, the Trustee's claims must be tried by a jury. Because Defendants do not consent to the bankruptcy court's jurisdiction over these claims, cause to withdraw the reference exists.

Finally, judicial efficiency and cost economy weigh in favor of immediate withdrawal. *Stern* established that the bankruptcy court does not have constitutional authority to adjudicate the claims raised in the Adversary Proceeding. Thus, all of the bankruptcy court's decisions would have to be reviewed *de novo* by this Court. The early stage of the proceedings, the bankruptcy court's lack of any history or familiarity with the Adversary Proceeding, and the bankruptcy court's absence of authority over the claims asserted in the Adversary Proceeding compel immediate withdrawal to this Court.

## PROCEDURAL HISTORY RELEVANT TO THE MOTION

The Trustee filed a complaint against the Defendants on February 16, 2012 (Doc. # 1), a copy of which is attached hereto as Exhibit A. The Complaint contains the following claims: turnover and accounting of property under 11 U.S.C. § 542; fraudulent transfers under 11 U.S.C. §§ 548, 550, and 551 of the Bankruptcy Code; fraudulent transfers under New Mexico Fraudulent Transfer Act and 11 U.S.C. §§ 544, 550, and 551; and disallowance and subordination of claim under the Bankruptcy Code. Defendants did not file proof of claim. On February 27, 2012 Defendants filed a Notice of Jury Demand and Intent to Seek Clarification of the Bankruptcy Court's Jurisdiction. (Doc. # 7.)

## ARGUMENT

## I.      STANDARD FOR WITHDRAWAL OF THE REFERENCE

District courts have discretion to "withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . for cause shown." 28 U.S.C. § 157(d). Although "cause" is

not statutorily defined, courts consider the following factors in analyzing whether withdrawal is proper: (1) whether a jury trial was demanded; (2) what is the most efficient use of the resources; (3) what is the delay and what are the costs to the parties; (4) what will promote uniformity of bankruptcy administration; and (5) what will prevent forum shopping. *See Reiderer v. Brooke Holdings, Inc., et al. (In re Brooke Corp.)*, 2011 WL 507632, *4 (Bankr. D.Kan. Sep. 27, 2011) (citations omitted). The first three factors weigh in favor of withdrawing the reference of the Adversary Proceeding immediately. The last two factors are irrelevant.

**II.** ***STERN V. MARSHALL* DEPRIVES THE BANKRUPTCY COURT OF CONSTITUTIONAL AUTHORITY TO RESOLVE THE CLAIMS ASSERTED IN THE ADVERSARY PROCEEDING**

On June 23, 2011, in *Stern v. Marshall,* the Supreme Court held unconstitutional the grant of jurisdiction to the bankruptcy courts of certain proceedings. Since June 23, 2011, courts around the country have been struggling to deal with the consequences of that decision. *See In re Okwonna-Felix*, 2011 WL 3421561, *4 (Bankr. S.D.Tex. Aug. 3, 2011); *see also Meoli v. The Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 456 B.R. 318, 322 (Bankr. W.D.Mich. August 17, 2011) (finding that the Court "dropped a bombshell" by holding that bankruptcy court's exercise of jurisdiction was unconstitutional even though statutorily prescribed). *Stern* instructs that bankruptcy courts have no constitutional authority to hear and determine fraudulent conveyance claims brought against the Defendants by the Trustee. As a result, withdrawal of the reference is necessary.

In *Stern*, the Supreme Court held that a counterclaim asserted by Vickie Marshall, as debtor-in-possession, was a core claim as defined in 28 U.S.C. § 157(b)(2) because it was within the category enumerated in section 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate." 131 S. Ct. at 2604. The Court nonetheless held that permitting

a bankruptcy court to enter a final judgment on a state law counterclaim would violate Article III of the Constitution. *See id.* 2608. The counterclaim did not involve a "public right" that may be adjudicated by a non-Article III court. *Id.* at 2614. The Court reasoned that, when claims are "made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,'" and do not fall within the "category of cases involving 'public rights' that Congress constitutionally assigned to 'legislative' courts for resolution," they must be adjudicated by an Article III judge. *Id.* at 2609-10. (citations omitted).

The Court made clear that fraudulent conveyance claims like the ones asserted in the Adversary Proceeding may not be heard and determined by a non-Article III court, even though 28 U.S.C. § 157(b)(2)(H) designates as core "proceedings to determine, avoid, or recover fraudulent conveyances." Discussing its 1989 *Granfinanciera* decision, 492 U.S. at 41, which involved fraudulent conveyance claims, the *Stern* Court wrote:

> In *Granfinanciera,* we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the "public rights" exception. We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Id.* [492 U.S.] at 54–55, 109 S.Ct. 2782. We reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* at 56, 109 S.Ct. 2782. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions."

*Stern*, 131 S. Ct. at 2614.

While the *Granfinanciera* Court primarily examined whether defendants are entitled to a jury trial on fraudulent conveyance claims and was careful to note that it was not expressing any view on a bankruptcy court's ability to adjudicate fraudulent conveyance actions under Article III (*see* 492 U.S. at 64), the *Granfinanciera* Court's reasoning, when combined with *Stern*'s analysis, compels the conclusion that fraudulent conveyance claims may be determined only in by an Article III judge.

In *Stern*, the Supreme Court finally resolved the issue left open by *Granfinanciera*, holding that counterclaims involving private rights—just "like the fraudulent conveyance claim at issue in *Granfinanciera*" must be finally determined in an Article III forum. *Stern*, 131 S. Ct. at 2614 ("Vickie's counterclaim—like the fraudulent conveyance claim at issue in *Granfinanciera*—does not fall within any of the varied formulations of the public rights exception in this Court's cases."). In doing so, *Stern* removed any doubt that a bankruptcy court's ability to finally adjudicate a particular claim turns on whether the claim involves a private or public right, not whether Congress has characterized the claim as "core" or "noncore."

The Trustee will likely argue that *Stern* should be narrowly construed and therefore, even after *Stern*, bankruptcy courts have constitutional authority to adjudicate fraudulent conveyance claims. *See Stern*, 131 S. Ct. at 2620; *but see Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP)*, 2011 WL 6179149,\*\*2-3 (N.D.Cal. Dec. 13, 2011) (rejecting debtor's argument that *Stern* is inapplicable to other "core" matters, primarily fraudulent conveyance claims); *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, 2011 WL 5828013, \*2 (E.D.Va. Nov. 18, 2011) ("*Stern,* together with *Granfinanciera,* clearly supports the conclusion that the authority to issue a final decision in a fraudulent conveyance action is reserved for Article III

Case 12-01082-j    Doc 11    Filed 03/15/12    Entered 03/15/12 12:01:26 Page 6 of 12

courts.") (citing *Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*, 2011 WL 3911082, at *2 (N.D.Ill. Sept. 1, 2011)).

But this Court need not interpret *Stern* expansively to recognize its application to fraudulent conveyance claims. If *Stern* has <u>any</u> application beyond its specific facts, it is to fraudulent conveyance claims. Indeed, the *Stern* majority repeatedly compared the counterclaim it was examining with the fraudulent conveyance claim in *Granfinanciera*. *See Stern*, 131 S. Ct. at 2611, 2614, 2618. And it held that Marshall's "counterclaim—*like the fraudulent conveyance claim at issue in Granfinanciera*," had to be heard by an Article III judge because it did not fall within the "public rights" exception. *Id.* at 2614 (emphasis added).

While the Tenth Circuit Court of Appeals has not addressed the implications of *Stern* on fraudulent conveyance actions, courts across the country have held that bankruptcy courts lack constitutional authority to enter final judgments on fraudulent conveyance claims by extending *Stern*'s rational to such claims. *See In re El-Atari*, 2011 WL 5828013, at *3 n.4 (recognizing that all district courts addressing the issue have concluded that *Stern* precludes bankruptcy courts from finally adjudicating fraudulent conveyance claims); *In re Canopy Fin., Inc*, 2011 WL 3911082, at *2 (holding that "by likening the claim in question to the fraudulent conveyance claims in *Granfinanciera,* the *Stem* Court made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on the [fraudulent conveyance] claims[.]"); *In re Teleservices Group, Inc.*, 456 B.R. at 325 ("But *Stern*, when combined with *Granfinanciera*, at the very least suggests that a bankruptcy court's entry of a money judgment in connection with an avoided fraudulent transfer is constitutionally suspect."); *In re Heller Ehrman LLP*, 2011 WL 6179149, at *5 (holding that, after *Stern*, bankruptcy courts do not have power to issue final judgment on fraudulent transfer claim); *Development Specials, Inc. v. Akin Gump Strauss Hauer*

*& Feld LLP (In re Coudert Brothers LLP)*, 2011 WL 5244463, *9 (S.D.N.Y. Nov. 2, 2011) (same); *Sitka Enterprises, Inc. v. Segarra-Miranda,* 2011 WL 7168645, *3 (D. Puerto Rico August 12, 2011) (same); *Mercury Companies, Inc. v. FNF Sec. Acquisition, Inc.*, 460 B.R. 778, 780-81 (D.Co. 2011) (questioning whether bankruptcy courts have authority to issue final decisions in connection with fraudulent conveyance and preference claims after *Stern*); *but see Miller v. Greenwich Capital Financial Products, Inc., et. al. (In re American Business Financial Services, Inc.)*, 457 B.R. 314, 319-20 (Bankr. D.Del. 2011) (holding that bankruptcy court has authority to hear fraudulent conveyance claims); *Springel v. Prosser (In re Innovative Commun. Corp.)*, 2011 WL 3439291, *3 (Bankr. D.V.I. Aug. 5, 2011) (issuing a final judgment as to claims pursuant to 11 U.S.C. §§ 548 and 549 but a "report and recommendation" as to the claims asserted pursuant to § 544(b)).

The Trustee has asserted four types of claims against the Defendants: turnover and accounting of property under 11 U.S.C. § 542; fraudulent transfers under 11 U.S.C. §§ 548, 550, and 551 of the Bankruptcy Code; fraudulent transfers under New Mexico Fraudulent Transfer Act and 11 U.S.C. §§ 544, 550, and 551; and disallowance and subordination of claim under the Bankruptcy Code. The fraudulent transfer claims under the Bankruptcy Code and New Mexico State law are precisely the types of claims that *Stern* holds the bankruptcy courts may not finally adjudicate. *See e.g., In re Canopy Fin., Inc*, 2011 WL 3911082, at *2; *In re Heller Ehrman LLP*, 2011 WL 6179149, at *5. Therefore, the Adversary Proceeding should be withdrawn.

## III. DEFENDANTS' RIGHT TO A JURY TRIAL FURTHER SUPPORTS WITHDRAWAL OF THE REFERENCE

The bankruptcy court's authority to conduct jury trials is very limited:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such

Case 12-01082-j    Doc 11    Filed 03/15/12    Entered 03/15/12 12:01:26 Page 8 of 12

> jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e); *see In re Cinematronics*, 916 F.2d 1444, 1451 (9th Cir. 1990) ("[W]here a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate.")

"'[T]he right to a jury trial has been recognized as cause for withdrawal of reference.'" *In re Oliver*, 2011 WL 6097810, *3 (Bankr. D.Kan. Dec. 6, 2011) (citations omitted); *see Riedeer v. American Intern. Group, Inc.*, 2011 WL 3325889 (D.Kan. Aug. 2, 2011) (sustaining immediate withdrawal to district court where defendant requested jury trial and parties did not consent to bankruptcy jurisdiction); *Ellenberg v. Bouldin*, 125 B.R. 851, 856 (N.D.Ga. 1991) (withdrawing reference in fraudulent transfer and preference action because defendant has right to jury trial); *see In re Guenther*, 65 B.R. 650, 652 (Bankr. D.Co. 1986) (withdrawal to district court is proper where jury trial is requested and parties do not consent to bankruptcy court jurisdiction). Defendants are entitled to a jury trial on the claims asserted against them. *See Granfinanciera*, 492 U.S. at 36 (Defendant has a Seventh Amendment right to a jury trial "when sued by the trustee in a bankruptcy to recover allegedly fraudulent monetary transfer.").

## IV.   WITHDRAWAL OF THE REFERENCE WOULD PROMOTE JUDICIAL ECONOMY AND EFFICIENT USE OF THE DEBTOR'S AND DEFENDANTS' RESOURCES

First, as articulated in *Stern*, the bankruptcy court cannot constitutionally hear and determine the claims raised in the Adversary Proceeding. *See* Part II *supra.* Post-*Stern,* the bankruptcy court –at most– has authority to submit proposed findings of fact and conclusions of law to this Court, which must then conduct *de novo* review. *See* 28 U.S.C. § 157(c). Because the Defendants intend to demand a jury trial and will not consent to the bankruptcy court conducting that trial, the Adversary Proceeding ultimately will have to be tried in this Court.

Clearly, under these circumstances, it would be inefficient to allow the case to proceed in bankruptcy court. *See E3 Biofuels-Med, LLC v. Zurich American Ins. Co.*, 2009 WL 274477 (D.Kan. Jan. 26, 2009) (transferring case to district court where bankruptcy court had authority to issue only recommendation and matter was in initial stages of litigation).

Second, this is not a situation where the bankruptcy court has an extensive history or familiarity with the Adversary Proceeding that might make it more efficient for that court to continue to preside over it. On the contrary, the Adversary Proceeding was commenced on February 16, 2012 and the Defendants have not yet answered. The bankruptcy court and this Court have essentially the same familiarity with the allegations in this Adversary Proceeding. Therefore, immediate withdrawal to this Court makes most sense.

Third, having this Court withdraw the reference now will not impose extra cost or delay on the parties because the bankruptcy court has acquired no special knowledge or familiarity with the Adversary Proceeding. Indeed, because the bankruptcy court will have to make proposed findings of fact and conclusions of law subject to *de novo* review by this Court, failing to withdraw the reference immediately will impose unnecessary delay and expense on the parties. The extra delay and cost imposed by keeping the Adversary Proceeding in the bankruptcy court weighs in favor of withdrawing the reference immediately.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court withdraw the reference of the Adversary Proceeding immediately.

## CERTIFICATION PURSUANT TO NM LBR 9013-1.1

Undersigned counsel for the Defendants certifies that on March 14, 2012 he informed the

Trustee's counsel of Defendants' intent to file this motion and Trustee's counsel has concurred

with the relief sought.

Respectfully submitted on March 15, 2012

By:    */s/ submitted electronically*                    BECKER & POLIAKOFF, LLP
            Michael Cadigan                         Helen Davis Chaitman
            Cadigan Law Firm, P.C.               45 Broadway
            3840 Masthead Street, N.E           New York, NY 10006
            Albuquerque, New Mexico 87109     (212) 599-3322
            (505) 830-2076                        HChaitman@becker-poliakoff.com
            cadigan@cadiganlaw.com
            *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I, Jacqueline A. Strain, hereby certify that I caused a true and correct copy of the

foregoing document(s) to be served upon the parties in this action who receive electronic service

through CM/ECF.  I certify under penalty of perjury that the foregoing is true and correct.

Dated:  March 15, 2012                                    */s/ Jacqueline A. Strain*

Case 12-01082-j    Doc 11    Filed 03/15/12    Entered 03/15/12 12:01:26 Page 12 of 12